IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CAROL D. MOORE, | ) |
|               Plaintiff, | ) |
| v. | ) 1:23CV739 |
| STEVE MANSBERY, ALICE C. STUBBS, and THARRINGTON SMITH, LLP, | ) |
|               Defendants. | ) |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on Steve Mansbery, Alice C. Stubbs, and Tharrington Smith, LLP's (collectively, "Defendants") Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Entry 7.) Plaintiff has filed a response in opposition (Docket Entries 10, 13) and Defendants have filed a reply (Docket Entry 11.) In addition, Plaintiff has filed what the Court construes as sur-replies. (Docket Entires 12, 14, 19.) For the reasons stated herein, the undersigned recommends that Defendants' motion be granted.

**I.    BACKGROUND**

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 alleging a deprivation of her due process rights as a result of a conspiracy between Defendants, Plaintiff's ex-husband Dr. James B. Moore III, and Plaintiff's former attorney, William W. Jordan (now deceased), during equitable distribution and alimony proceedings in state court. (*See generally* Complaint, Docket

Entry 1.) More specifically, Plaintiff alleges that she and Dr. Moore were married for 25 years with the family businesses in the financial industry producing "wealth for estate planning" for two named trusts in the millions. (*Id.* at 9 ("Carol D. Moore Revocable Trust valued $1,550,000.00").)[1] Defendants represented Dr. Moore at equitable distribution proceedings,[2] and Defendants allegedly engaged in conspiracy to fabricate evidence by creating a "deceptive accounting scheme . . . that falsely reported the Moore's asset valuation [as] $0 recorded in the equitable distribution judgment." (*Id.* at 8; *see also id.* at 17.)[3] Plaintiff further alleges that Defendants' actions "denied [her] equal accessibility to a fair legal proceeding" with her "due process rights . . . directly affected by an ongoing inherent bias against the disclosure of her Expert Witness' examination report that uncovered the accounting scheme." (*Id.* at 8.) Plaintiff's accounting examiner was never able to "present her report" to challenge Defendant Mansbery's calculations during a previous state proceeding in September 2020. (*Id.* at 15-16.) Plaintiff also alleges that Defendants conspired to fabricate the evidence to "intentionally . . . defraud Plaintiff of her property that impoverished her." (*Id.* at 8.) Further, Plaintiff alleges that Defendants omitted and concealed evidence from the state court. (*Id.*; *see also id.* at 17.)

---

[1] Unless otherwise noted, all citations in this recommendation refer to the page numbers at the bottom right-hand corner of the documents as they appear in the Court's CM/ECF system.

[2] Defendants Mansbery and Stubbs represented Dr. Moore; Defendant Tharrington Smith, LLP is alleged to be the law firm where Defendants Mansbery and Stubbs practiced law. (*See* Compl. at 4.)

[3] On numerous occasions, Plaintiff references an "Exhibit B" in the Complaint which appears to be the contents of the "deceptive accounting scheme" itself. (*See e.g.*, Compl. at 4, 8, 15-17.) While seemingly attached elsewhere amongst Plaintiff's filings, (*see* Docket Entries 10-2 at 43, 44; 19-14), Plaintiff does not attach "Exhibit B" to the Complaint. In any event, the Complaint explains that "'Exhibit B' awarded 100% of the concealed assets," valued at $4.7 million, to Dr. Moore, and "Plaintiff's net distributed award was $0 as stated in 'Exhibit B'." (Compl. at 15.)

Plaintiff has set forth a timeline of several events and hearings, including her several attempts to seek relief from the equitable distribution judgment, modification of her alimony order, recusal of one of the state judges involved, and to change venues. (*See id.* at 10-14.) Plaintiff also sought relief with the Orange County Sheriff's Office pursuing criminal charges but was told the matter needed to be resolved in civil court. (*Id.* at 13.) According to the instant Complaint, in a March 2023 order, the state court prohibited Plaintiff "from filing any action, motion or pleading as it relates to any marital claims between the parties." (*Id.* at 14.) Plaintiff alleges that she is now homeless, and her credit has been destroyed. (*Id.* at 18.) Plaintiff requests relief in the following amounts:

> Plaintiff requests her actual damages $2.4M to be made whole. (Plaintiff securities accounts tracked by Shepard, Smith, Edwards & Kantas LLP.)
>
> Plaintiff requests $360,000.00, a conservative 5% interest earnings, that her investments would have yielded 2020 through 2023 during her time spent in district court.
>
> Plaintiff requests compensation for her courtroom time while acting Pro Se at $269,950.00 that includes research, tracing, accounting/financial analysts, court filings, etc.
> . . .
>
> Plaintiff requests $2M damages as compensation for the pain and suffering for the ongoing abuse that [Defendants] caused her
> . . . .

(*Id.* at 19.)

Defendants move to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6), arguing that Plaintiff's claim is: (1) barred by the *Rooker-Feldman* doctrine;[4] (2) barred by the statute of

---

[4] The doctrine arises from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

limitations and statute of repose; (3) not applicable to Defendants because they were not acting "under color of law" for the purposes of Section 1983; and (4) not plausible under the *Twombly/Iqbal* standard. (Docket Entry 7 at 1-2.) Plaintiff responded in opposition to Defendants' motion to dismiss on October 20, 2023, and filed a supplement to her response on October 27, 2023. (Docket Entries 10, 13.) Defendants replied to Plaintiff's brief (Docket Entry 11), to which Plaintiff thereafter filed additional replies. (Docket Entries 12, 14, 19.)

## II. DISCUSSION

### A. Standard of Review

A motion under Rule 12(b)(1) raises the question "whether [a plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). The plaintiff bears the burden of establishing subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015) (citing *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)). When evaluating a Rule 12(b)(1) motion to dismiss, a court may consider evidence outside the pleadings and should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647 (citing *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

On the other hand, a motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.*; *see also Simmons v. United Mortg. and Loan Inv.*, *LLC*, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (citations and quotations omitted). The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, the standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate the plaintiff has stated a claim that makes it plausible she is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 557).

**B. Analysis**

1. <u>Plaintiff's claim is barred by the *Rooker-Feldman* doctrine.</u>

Defendants first argue that Plaintiff's claim is barred by the *Rooker-Feldman* doctrine. (Docket Entry 8 at 4-5.) The *Rooker-Feldman* doctrine applies where a federal litigant seeks to review or overturn a state court order in federal district court. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 281 (2005). "Under the *Rooker–Feldman* doctrine, lower federal courts generally do not have jurisdiction to review state-court decisions; rather, jurisdiction to review such decisions lies exclusively with superior state courts and, ultimately, the United

5

Case 1:23-cv-00739-TDS-JLW   Document 20   Filed 07/15/24   Page 5 of 10

States Supreme Court." *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997). The *Rooker-Feldman* doctrine prevents a federal court from determining that a state court judgment was erroneously entered or taking action that would render a state court judgment ineffectual. *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202-03 (4th Cir. 1997) (citing *Ernst v. Child and Youth Servs.*, 108 F.3d 486, 491 (3d Cir. 1997)). The doctrine also bars federal courts from addressing issues that are "'inextricably intertwined' with the issues that were before the state court." *Washington v. Wilmore*, 407 F.3d 274, 279 (4th Cir. 2005) (quoting *Feldman,* 460 U.S. at 486). An issue is "inextricably intertwined" with those before the state court if "success on the federal claim depends upon a determination that the state court wrongly decided the issues before it." *Plyler,* 129 F.3d at 731 (internal quotation marks and citation omitted).

The *Rooker-Feldman* doctrine is a "narrow doctrine." *Lance v. Dennis*, 546 U.S. 459, 464 (2006) (per curiam). In *Exxon,* the Supreme Court limited the doctrine "to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284. The relief sought in federal court must "reverse or modify the state court decree" for the doctrine to apply. *Adkins v. Rumsfeld*, 464 F.3d 456, 464 (4th Cir. 2006) (internal quotation marks omitted). Accordingly, "*Exxon* requires us to examine whether the state-court loser who files suit in federal district court seeks redress for an injury caused by the state-court decision itself. If [the state-court loser] is not challenging the state-court decision, the *Rooker-Feldman* doctrine does not apply." *Davani v. Va. Dep't. of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006) (footnote omitted).

6

Here, the Court concludes that Plaintiff's claim is barred by the *Rooker-Feldman* doctrine. Plaintiff's allegations surround the state equitable distribution and alimony proceedings, particularly Defendants' alleged conduct in devising a deceptive accounting scheme to deny Plaintiff due process and prevent her from obtaining property belonging to her. (*See generally* Compl.) At the crux, "[t]he nature of [P]laintiff's complaint and the relief sought clearly indicate that she 'in effect seeks to take an appeal of an unfavorable state-court decision to [this] lower federal court.'" *Broughton v. Aldridge*, No. 5:10-CV-231-FL, 2010 WL 4809036, at *4 (E.D.N.C. Nov. 17, 2010) (citing *Lance v. Dennis,* 546 U.S. 459, 466 (2006)). Indeed, Plaintiff previously sued her own attorney (and an alleged co-conspirator in the instant action), Mr. Jordan,[5] for legal malpractice related to the equitable distribution proceedings, which the state trial court entered summary judgment against Plaintiff, and the judgment was affirmed on appeal over 5 years ago. *See Moore v. Jordan*, 259 N.C. App. 590, 816 S.E.2d 218 (2018).

Again, Plaintiff's Complaint has set forth a timeline of several dates and hearings, including her several attempts to seek Rule 60(b) relief, among other things. (*See* Compl. at 10-14.) Plaintiff alleges her accounting examiner was not permitted to present her report during the September 2020 hearing, *see* Compl. at 15; however, the real focus of her Complaint clearly "seeks redress for an injury caused by [a] state-court decision." *See Davani,* 434 F.3d at 719. In her response to Defendants' motion, Plaintiff argues that the *Rooker-Feldman* doctrine is inapplicable (*see* Docket Entry 10 at 4), while simultaneously attaching the June 20, 2012

---

[5] To reiterate, Plaintiff alleges that Mr. Jordan is deceased. He is not a defendant in this action.

7

Case 1:23-cv-00739-TDS-JLW   Document 20   Filed 07/15/24   Page 7 of 10

Equitable Distribution Judgment and Alimony Order, and what purports to be the September 2020 accounting examiner's report. (*See* Docket Entries 10-1, 10-2; *see also* Docket Entry 13.)[6] Plaintiff argues that this is a case about "Defendant[s'] deceptive use of fabricated numbers" and her claim is that she "suffered an actual financial injury" by Defendants' acts. (Docket Entry 10 at 2-3.) However, beyond an attempt to relitigate, this financial injury Plaintiff raises is "inextricably intertwined" with the prior state court decisions, in that it would require this Court to reconsider prior state court decisions to determine whether they were properly decided. *See Dye v. Hatfield,* No. Civ. l:03CV01077, 2004 WL 3266029, at *5 (M.D.N.C. Aug. 26, 2004). As in *Dye,* a ruling in favor of Plaintiff "would necessarily require this court to find that the North Carolina state courts either wrongfully decided certain issues before them or improperly entered orders and judgments against Plaintiff [ ] in civil ... matters related to Plaintiff's domestic dispute." *Id. See also Chien v. Motz,* No. 3:18-CV-106 (MHL), 2019 WL 346761, at *5 (E.D. Va. Jan. 7, 2019) (unpublished) ("Importantly, for this Court to determine whether Defendants committed 'subject error,' as Plaintiff alleges, the Court would have to reach the merits of issues already decided upon in state court, or issues inextricably intertwined with those addressed in state court."), *report and recommendation adopted*, No. 3:18CV106, 2019 WL 346406 (E.D. Va. Jan. 28, 2019) (unpublished). Accordingly, the *Rooker-Feldman* doctrine

---

[6] As previously noted, Plaintiff filed additional documents after Defendants filed a reply, which the undersigned construes collectively as a sur-reply. (*See* Docket Entries 12, 14, 19.) "Generally, parties do not have the right to file a sur-reply and may only do so [w]hen fairness dictates, such as when new arguments are raised in the reply brief." *Yang v. Lai*, No. 1:22CV5, 2022 WL 2440834, at *3 (M.D.N.C. July 5, 2022) (unpublished) (internal quotations and citation omitted). Here, no new arguments were raised in Defendants' reply brief warranting the filing of a sur-reply. Nevertheless, upon review of the documents and attachments thereto, the undersigned finds that it contains no additional arguments or facts that would affect the analysis herein, including the undersigned's conclusion that Defendants' motion to dismiss should be granted.

precludes this Court from exercising jurisdiction in this case. *Broughton*, 2010 WL 4809036, at *4; *see also Hernandez Cuevas v. Hernandez*, No. 1:20CV178, 2020 WL 9848480, at *2 (M.D.N.C. Apr. 20, 2020) (unpublished) ("[T]o the extent that Plaintiff is attempting to appeal or obtain review of the state court decisions, such state court judgments are not subject to review in this Court."); *Mihai v. Lee*, No. CV TDC-15-1086, 2016 WL 259673, at *2 (D. Md. Jan. 21, 2016) (unpublished) ([A]lthough the Complaint is styled [one way], . . . [the plaintiff] is seeking to revisit Defendants' state court victories."). Defendants' motion to dismiss should be granted for this reason.

2. <u>Defendants are not subject to suit under § 1983.</u>

Notwithstanding the *Rooker-Feldman* jurisdictional bar, Plaintiff's claim would nevertheless fail because Defendants are not subject to suit under § 1983.[7] A plaintiff stating a claim under § 1983 "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The Fourth Circuit has held that "[p]rivate lawyers do not act 'under color of state law' merely by making use of the state's court system." *Fleming v. Asbill*, 42 F.3d 886, 890 (4th Cir. 1994). Furthermore, "[a] lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983." *Polk County v. Dodson*, 454 U.S. 312, 318 (1981). Here, Plaintiff does not allege that Defendants are acting under color of state law and Defendants'

---

[7] Defendants raise additional arguments, *see* Docket Entry 8 at 5-6, 8; however, in light of the conclusions herein, the undersigned will not address them.

"representation of [Plaintiff's ex-husband] in state court, alone, does not supply the 'under color of law' requirement for a Section 1983 claim." *Dalenko v. Aldridge*, No. 5:09-CV-117-F, 2009 WL 4499130, at *5 (E.D.N.C. Dec. 3, 2009). Therefore, this too would be grounds for dismissal of Plaintiff's Complaint against Defendants. *See Summers v. Campbell*, No. 5:23-CV-188-MOC, 2024 WL 1200317, at *2 (W.D.N.C. Mar. 20, 2024) (unpublished) ("Plaintiff purports to assert a claim against Defendant Davis, an attorney, but he makes no factual allegations to support the contention that this Defendant was acting under the color of state law."); *Allen v. Brown*, No. 5:22-CV-00179-BO, 2022 WL 3225088, at *2 (E.D.N.C. June 7, 2022) (unpublished) ("Private attorneys and law firms are not engaged in state action for purposes § 1983 by participating in legal proceedings."), *report and recommendation adopted*, No. 5:22-CV-179-BO, 2022 WL 3222001 (E.D.N.C. Aug. 9, 2022) (unpublished); *Hernandez*, 2020 WL 9848480, at *3 (no allegations that ex-spouse nor her attorney are state actors or acting under color of state law); *Broughton*, 2010 WL 4809036, at *5 (plaintiff's ex-husband's former attorney and attorney representing executor of ex-husband not subject to § 1983 action).

### III. CONCLUSION

For the reasons stated herein, IT IS HEREBY RECOMMENDED that Defendants Steve Mansbery, Alice C. Stubbs, and Tharrington Smith, LLP's Motion to Dismiss (Docket Entry 7) be GRANTED and Plaintiff's claim be dismissed without prejudice for lack of subject matter jurisdiction as barred by the *Rooker-Feldman* doctrine. In the alternative, the case should be dismissed because Defendants are not amenable to suit under § 1983.

                                                      /s/ Joe L. Webster
                                                United States Magistrate Judge

July 15, 2024